UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:24-cv-01446-SSS-DTBx | Date | August 13, 2024 |
|---|---|---|---|
| Title | Cameron Harrell v. Richard O. Reed Post, et al. | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S CALIFORNIA STATE LAW CLAIMS [DKT. 12]**

## I.   INTRODUCTION

On July 11, 2024, Plaintiff Cameron Harrell filed this action asserting a claim for injunctive relief arising out of an alleged violation of the Americans with Disabilities Act ("ADA") and one or more "construction related accessibility claims" under California law, including a claim for damages under California's Unruh Act. [Dkt. 1]. Because the Court possesses only supplemental jurisdiction over the Unruh Act and any other state law claims, and in light of California's statutory efforts to curtail such claims, the Court ordered Harrell to show cause in writing why the Court should exercise supplemental jurisdiction over these claims. [Dkt. 9]; *see* 28 U.S.C. § 1367(c). The Court has reviewed the response filed by Harrell and Harrell's counsel, [Dkt. 12], and **DISMISSES WITHOUT PREJUDICE** the Unruh Act claim and all other state law claims.

## II. BACKGROUND

### A. California's Limitations on the Filing of Construction-Related Accessibility Claims

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act."[1] *Velez v. Il Fornaio (Am.) Corp.*, No. CV 3:18-1840 CAB (MDD), 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018), *rev'd on other grounds*, 808 F. App'x 581 (2020).  When California continued to experience large numbers of these actions, the California Legislature found that "a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state . . . frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation."  Cal. Civ. Proc. Code § 425.55(a)(2).

In response to these "special and unique circumstances," Cal. Civ. Proc. Code § 425.55(a)(3), California imposed additional limitations on "high-frequency litigants"[2]:

---

[1] These heightened pleading requirements apply to "construction-related accessibility claim[s]" brought on behalf of high-frequency litigants.  Cal. Civ. Proc. Code § 425.50(b)(2).  A "construction-related accessibility claim" encompasses any "civil claim," including those brought under California Civil Code §§ 51, 54, 54.1, and 55, based "wholly or in part" on an alleged violation of an accessibility standard with respect to a place of public accommodation.  Cal. Civ. Code § 55.52 (a)(1).  As such, Harrell's other California state law claims are subject to the heightened pleading standards as well.

[2] A "high-frequency litigant" is defined as "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging
     (continued . . . )

1. requiring high-frequency litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees, (Cal. Gov't Code § 70616.5); and

2. requiring high-frequency litigants to allege certain additional facts, including:
   a. whether the action is filed by, or on behalf of, a high-frequency litigant, and the number of construction-related accessibility claims filed by the high-frequency litigant in the preceding 12 months, Cal. Civ. Proc. Code § 425.50(a)(4)(A)(i)-(ii);
   b. the high-frequency litigant plaintiff's reason for being in the geographic area of the defendant's business, *id.* § 425.50(a)(4)(A)(iii); and
   c. the reason why the high-frequency litigant plaintiff desired to access the defendant's business, *id.* § 425.50(a)(4)(A)(iv).

### B.  Supplemental Jurisdiction

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction "in exceptional circumstances, [if] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).  District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."

---

a construction-related accessibility violation." Cal. Civ. Proc. Code § 425.55(b)(1).  An attorney is also considered a high-frequency litigant if that attorney "has represented as attorney of record 10 or more high-frequency litigant plaintiffs in actions that were resolved within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation" barring certain exceptions. *Id.* § 425.55(b)(2).

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity,'" also known as the *Gibbs* factors. *Id.* (quoting *Cohill*, 484 U.S. at 350).

If a district court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(1)-(3), it need not articulate its reasons for doing so.  *See San Pedro Hotel, Inc. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998).  But if a district court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), it need only "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Exec. Software N. Am. Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).  This "inquiry is not particularly burdensome."  *Id.*

### III.   DISCUSSION

#### A.   The Court Declines to Exercise Supplemental Jurisdiction Over the Construction-Related Accessibility Claims

Harrell and Harrell's counsel are both high-frequency litigants in the arena of disability claims and are not strangers within the courts of the Ninth Circuit. [Dkt. 12-1 at 2; Dkt. 12-2 at 4].  By filing these actions in federal court, Harrell has evaded the California legislature's limits on construction-related accessibility claims brought by high-frequency litigants.  *See* Cal. Civ. Proc. Code § 425.50(4)(A).  It is not, under the *Gibbs* factors, fair to Defendants that Harrell may pursue construction-related accessibility claims in this Court while evading the limitations California has imposed on such claims.  To allow federal courts to become an escape hatch and allowing Harrell to pursue such claims—regardless of whether a particular plaintiff or the small number of law firms that frequently pursue these actions currently satisfies the definition of a "high-frequency litigant"—is also an affront to the comity between federal and state courts.  The Ninth Circuit concluded this situation presents "exceptional circumstances" for purposes of § 1367(c)(4).  *Arroyo v. Rosas*, 19 F.4th 1202, 1211 (9th Cir. 2021).

Declining to exercise supplemental jurisdiction over the state law claims at the outset of the litigation preserves federal judicial resources for the consideration of federal claims, while still allowing plaintiffs to pursue their state law claims in state court. Otherwise, continuing to exercise supplemental jurisdiction would unnecessarily force this Court to expend resources to resolve state law claims for relatively modest statutory damages and attorneys' fees even after the federal claim is moot, or to inefficiently decline to exercise supplemental jurisdiction at a later date under 28 U.S.C. § 1367(c)(3) once the parties and Court have spent months litigating those claims in this forum. *See, e.g.*, *id.* at 1215-17. Moreover, exercising the Court's discretion to decline supplemental jurisdiction does not deprive Harrell of any remedies nor preclude an ADA claim for injunctive relief.

The Court thus concludes that "exceptional circumstances" justify the Court's discretion to decline to exercise supplemental jurisdiction over Harrell's state law construction-related accessibility claims in this action under 28 U.S.C. § 1367(c)(4). Similarly, in conducting the required case-by-case analysis, the Court concludes at this early stage of the litigation that declining to exercise supplemental jurisdiction over Harrell's state law construction-related accessibility claims in these circumstances presents "compelling reasons" and supports the values of judicial economy, convenience, fairness, and comity. *See Arroyo*, 19 F.4th at 1205.

## IV.   CONCLUSION

For the above reasons, the Court, in its discretion, **DECLINES** to exercise supplemental jurisdiction over Harrell's construction-related claims and thus **DISMISSES** them **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**